UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBERT ALMARAZ, | ) |
| Plaintiff, | ) Case No. CV 11-00099 AJW |
| v. | ) MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

On December 12, 2007, plaintiff, aged 32, filed an application for SSI benefits alleging that he had been disabled since February 1, 2006. [JS 2; Administrative Record ("AR") 51, 92-98]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled. The ALJ found that plaintiff had severe impairments consisting of status post gunshot wounds, residual pain, and hyperthyroidism (Graves disease), but retained the residual functional capacity ("RFC") to perform work available in significant numbers in the national

economy. [AR 20-26].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

### Credibility finding

Plaintiff contends that the ALJ failed properly to consider plaintiff's testimony about his subjective symptoms. [JS 4-13].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected

the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The record shows that in 1994, plaintiff suffered gunshot wounds to the stomach, lumbar spine, shoulder, and left knee. He underwent abdominal surgery with partial removal of the liver and intestine, as well as removal of the bullet from the lumbar spine. [JS 6; AR 33, 154)]. On May 5, 2007, plaintiff suffered another gunshot would, this time to the left ankle and foot area. [JS 6; AR 33, 154)]. Plaintiff also had diagnoses of hyperthyroidism and Graves disease[1]. [JS 6; AR 143, 148 186, 188].

Plaintiff characterizes his hearing testimony as follows:

> [H]e is unable to work due to his pain in his back, pain in his left ankle area, and a weakness in the left ankle area. He stated, "my back is like really not helping me out a lot," and that, "my foot is like, you know, I don't have no, no support on it, you know, and I can't do a lot of things, reach, carry." [Plaintiff] testified that the bullet that caused his left foot's injury "went in the top and came out in the bottom of my foot." He stated that his back pain starts in his lower back and radiates throughout his body, especially in his back and hip. He also stated that the back pain causes fatigue. [Plaintiff] specified that he is only able to stand in one place without moving for about half an hour, and that when sitting he can only sit for about "Fifteen, 20 minutes at most." After doing either activity for too long his back starts "hurting a lot," said [plaintiff].

[JS 7 (citing AR 34-38)].

The ALJ concluded that plaintiff's testimony about his subjective symptoms was not fully credible. Specifically, the ALJ found that plaintiff retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for four hours in an eight-hour day, sit for four hours in an eight-hour day, with an option to sit or stand as needed, and engage in occasional postural activities. [AR 23].

---

[1] Graves disease is an autoimmune disorder that leads to hyperthyroidism or overactivity of the thyroid gland. See U.S. Nat'l Library of Med., PubMed Health, at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001398/ (last visited Dec. 22, 2011).

The ALJ provided clear and convincing reasons supporting his credibility finding. Contrary to plaintiff's argument, the ALJ was allowed to consider the lack of objective medical evidence corroborating the alleged severity of plaintiff's subjective symptoms. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ observed that plaintiff's earnings record showed that he worked in 1995 and several years thereafter prior to his alleged onset of disability, indicating that the residual effects of his 1994 gunshot injuries were not disabling. [AR 23-24 & n.1; see AR 99-104]. The ALJ further noted that the record contained little evidence of medical treatment, and that what few treatment reports there were concerned plaintiff's thyroid condition rather than his gunshot injuries. [AR 23-24]. Los Angeles County USC Medical Center Treatment patient health service summaries indicate that plaintiff was treated at a Los Angeles County facility on March 2 and March 3, 1994 and for abdominal and intestinal injuries, and again from May 5 to May 7, 2007 for a gunshot wound to his foot. [AR 180, 190]. Progress notes show that plaintiff was seen three times between October 2007 and December 2007 by a Dr. Ghalili for hyperthyroidism and hypertension. [AR 141-148]. Plaintiff sought emergency care three times in June 2008 from a Los Angeles County clinic, where he was diagnosed and treated for hypertension, hyperthyroidism, and Graves disease. Plaintiff was prescribed Tapazole (methiamazole)[2] and Inderal (propranolol).[3] [AR 175-90].

At the Commissioner's request, Dr. Karamlou, a board-certified internist, conducted an internal medicine examination of plaintiff in February 2008. [AR 154-159]. Plaintiff exhibited a limp on the left side with painful walking and severely decreased range of motion in the left ankle. Plaintiff also exhibited decreased range of motion and muscle spasm in the lumbar spine, with pain complaints. No other abnormal examination findings were noted. An x-ray of the left ankle revealed no fracture, no degenerative changes, a well-maintained ankle mortise, and normal soft tissue. The impression was "normal left ankle." [AR 159].

---

[2] Methiamazole is used to treat hyperthyroidism. See U.S. Nat'l Library of Med., PubMed Health, at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000686/ (last visited Dec. 22, 2011).

[3] Propranolol is used to treat high blood pressure, among other things. See U.S. Nat'l Library of Med., PubMed Health, at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000727/ (last visited Dec. 22, 2011).

Based on plaintiff's "clinical findings and physical examination," Dr. Karamlou opined that plaintiff was "limited to standing and/or walking for 4 hours in an 8-hour workday with normal breaks in between. There is a limitation of bending. Lifting and carrying should be limited to 20 pounds occasionally and 10 pounds frequently." [AR 158].

The ALJ permissibly inferred that the objective medical evidence did not corroborate the alleged severity of plaintiff's subjective complaints, but instead was consistent with an RFC for a limited range of light work. Plaintiff contends that the ALJ minimized the effects of plaintiff's 2007 gunshot wound or the possibility "that it very may have aggravated the prior injury to an even greater, and now compounded, extent." [JS 9]. Plaintiff also argues that there "could be any number of reasons why" plaintiff has little evidence of treatment for his gunshot wounds, "not the least of which is that gunshot wounds are not a chronic disease which requires ongoing treatment, but rather a wound which simply takes time to heal and can lead to long-term recovery and pain." [JS 9].

Plaintiff's argument is speculative. He has not identified any existing medical evidence that the ALJ did not obtain or attempt to obtain, nor has he presented any objective medical evidence suggesting that his 1994 and 2007 gunshot wounds, singly or in combination, left him with a more restricted RFC than that found by the ALJ. Moreover, Dr. Karamlou's opinion to the contrary was uncontroverted. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (holding that the ALJ properly rejected the claimant's pain testimony based, in part, on the an examining physician's opinion indicating that the claimant was not disabled).

Substantial evidence also supports the ALJ's conclusion that plaintiff's subjective allegations were not consistent with the "minimal and very conservative treatment for his alleged pain—essentially, over the counter analgesics." [AR 24]. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (holding that the ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). Plaintiff contends that the ALJ's rationale was not legitimate because plaintiff testified that he took Vicodin, but that argument takes plaintiff's testimony out of context. On examination by the ALJ, plaintiff testified that he had "a lot of pain" in the "whole heel and the bottom part" of his left foot. [AR 35]. He also testified that he had back pain that radiated into his hips and "all [his] body" and that he was in pain "almost all day long." [AR 36]. Plaintiff

said that he took Vicodin for pain, and he had to "be taking my pills, you know, constantly." [AR 36, 39]. When the ALJ asked plaintiff if the Vicodin was given to him by a doctor, however, plaintiff answered "no." [AR 39]. He then said that he had received a prescription for Vicodin when he got shot in 2007 and had some pills left over, "[b]ut now I'm taking ibuprofen, I'm taking Aleve." [AR 39-40]. Plaintiff said that he was taking over-the-counter ibuprofen three time a day, and that it "helps some, not a lot but it stops a little bit of it." [AR 40]. The ALJ rationally inferred that plaintiff relied primarily on over-the-counter analgesics to alleviate pain.

Plaintiff argues that the use of non-narcotic pain relievers is not a valid reason for discrediting his subjective symptom testimony, and that a disability claimant has no "obligation to continue the use of narcotics in order to obtain benefits." [JS 10]. That argument is misguided. Plaintiff's discontinuance of narcotic pain medication was not dispositive of the issue of plaintiff's entitlement to benefits, and the ALJ did not make it so. He merely considered whether plaintiff's testimony about his use of pain medications— including his reasons for discontinuing Vicodin and his use of over-the-counter analgesics—was consistent with the alleged severity of his pain. The ALJ was entitled to conclude that it was not. See generally 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (stating that the information that a claimant "provide[s] about [his or her] pain or other symptoms," such as "what medications, treatments or other methods [the claimant] use[s] to alleviate them," is "an important indicator of the intensity and persistence of your symptoms"); Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that the ALJ properly rejected the claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain"); cf. Carmickle, 533 F.3d at 1162 (holding that the claimant's "minimal treatment regime" was not a proper basis for finding him not credible where his testimony and treating doctor's notes established that the claimant did not take stronger pain medication due to its adverse effects, and his insurance did not cover the only medication that provided significant relief without addiction potential or intolerable side effects).

The ALJ also found that plaintiff's daily activities did not support a finding that his pain was "intractable or disabling." [AR 24]. The ALJ remarked that plaintiff worked for sustained periods after recovering from his 1994 gunshot injuries, and even worked after his alleged onset of disability in 2006 and 2007, but not at the level of substantial gainful activity in either year. [AR 22, 24]. See 20 C.F.R. §

416.929(a)&(c)(3) (stating that the Commissioner will consider a claimant's efforts to work and prior work record in evaluating symptoms). The ALJ also pointed to plaintiff's testimony that he lived with his mother, played with his nephews, who also lived there; sometimes shopped or washed the dishes; and spent much of the day sitting reading or watching television, but frequently had to alternate between sitting and standing. [AR 24, 38-42]. Plaintiff's testimony about his daily activities while living in his mother's home was one factor the ALJ could consider, particularly in regard to whether plaintiff could perform a range of light work that included the option of sitting or standing at will. [AR 24]. See Fair, 885 F.2d at 602 (stating that "if a claimant is able to spend a substantial part of his day engaged in pursuits . . . that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation" of excess pain).

Plaintiff argues that the ALJ mischaracterized plaintiff's daily activities by failing to take into account a daily activities questionnaire he signed on December 19, 2007 (about a year before the hearing) saying that he was homeless, spent most days "walk[ing] around the parks picking up cans, all day," and got "really tired but [it's] what[] feeds me when I [don't] have food stamps." [JS 10; AR 122]. The ALJ did not err in failing to cite that evidence because it is not inconsistent with the ALJ's credibility finding. To the contrary, plaintiff's assertion that he spent all day picking up cans when he had no other way to get food would only buttress the ALJ's conclusion that plaintiff's subjective allegations were not fully credible. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ can use "ordinary techniques of credibility evaluation").

The ALJ articulated clear and convincing reasons, based on substantial evidence, for rejecting the alleged severity of plaintiff's subjective complaints.

///

///

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

December 22, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge